LOU ANN MAES,                          )
                                       )
            Plaintiff,                 )
                                       )
    vs.                                )        No. 06 C 6849
                                       )
ROBERT FOLBERG, BOARD OF               )
TRUSTEES FOR THE UNIVERSITY            )
ILLINOIS,                              )
                                       )
            Defendants.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff Lou Ann Maes brought this action against Robert Folberg and the Board of

Trustees for the University of Illinois, claiming violations of her rights under the Family

Medical Leave Act, 29 U.S.C. § 2611 et seq. ("FMLA"), the First and Fourteenth Amendments,

and state law. Judge Shadur, sitting for this court, received defendants' motion to dismiss and

strike, made some preliminary rulings, and allowed plaintiff an opportunity to respond.

After an analysis of the parties' arguments, we deny in part defendants' motion to

dismiss and strike.

## BACKGROUND

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, we must accept the complaint's well-pleaded factual allegations as true, including

the inferences reasonably drawn from them. McDonald v. Household Int'l, 425 F.3d 424, 425

(7th Cir.2005). Although the Supreme Court, in deciding a motion to dismiss an antitrust

claim, recently held that a plaintiff is obligated to provide the grounds of his entitlement for

relief in order to survive a 12(b)(6) motion (Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955

(2007)), the Seventh Circuit has consistently, and recently, articulated its view that Fed. R. Civ. P. 8(a) is a permissive pleading standard. *See e.g.,* Bowers v. Federation Internationale de l'Automobile, — F.3d —, 2007 WL 1518612 (7th Cir.2007) (post-Twombly opinion indicating that dismissal is appropriate only "if a plaintiff does not allege such a claim or if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief"); Vincent v. City Colleges of Chicago, 485 F.3d 919, 923 (7th Cir.2007) ("Civil Rule 8 calls for a short and plain statement; the plaintiff pleads claims, not facts or legal theories.... [T]he possibility that facts to be adduced later, and consistent with the complaint, could prove the claim, is enough for the litigation to move forward"). The following facts are taken from plaintiff's complaint.

Plaintiff is a licensed physician, certified by the American Board of Pathology in Clinical Pathology and Transfusion Medicine. In 2004, plaintiff came to the University of Illinois at Chicago ("UIC") Medical Center as a Visiting Director of Clinical Pathology. In 2005, she became Director of Transfusion Medicine and Interim Director of Clinical Microbiology. She remained in that position until October, 2005, when the events precipitating this lawsuit transpired. Plaintiff remains an associate professor in the UIC College of Medicine. Defendant Folberg is a physician licensed in pathology and ophthalmology, and the Chair of the Pathology Department at the UIC Medical Center. In that capacity, Folberg acted as plaintiff's supervisor. Defendant Board of Trustees of UIC is a public corporation established to operate and administer the UIC, including the UIC Medical Center.

In her position at the UIC Medical Center, plaintiff was responsible for ensuring the safe and effective operation of the UIC Medical Center Blood Bank. In its capacity as a health

care provider, the UIC Medical Center must submit to various inspections and maintain accreditations or certifications from various governmental and quasi-governmental agencies, including the Food and Drug Administration ("FDA"), the Joint Commission on Accreditation of Healthcare Organization ("JCAHO"), and the College of American Pathologists and the American Association of Blood Banks ("AABB"). Collections taken at the Blood Bank Donor Room ("BBDR"), a component of the UIC Blood Bank, are intensively regulated by the FDA and monitored by the AABB. According to plaintiff, such regulation requires a comprehensive process of documentation and development of procedures and monitoring, "including, but not limited to, the development of training regimens, standard operating procedures (SOP's), regimens for equipment, laboratory, environmental, processing and blood product quality control, protocols for screening donors, collecting and testing blood, storage and notification to donors and recipients of positive infectious disease test results or other issues affecting patient safety" (cplt., ¶ 13). Plaintiff received complimentary notations about her work at the UIC Medical Center and was promoted to a tenure track position in August, 2005.

In July, 2005, an employee of the Blood Donor Center submitted her resignation, in which she made allegations of misconduct against the associate director of the Blood Bank and Blood Bank Hemotherapy Center. The allegations suggested that prior to plaintiff's arrival the Blood Bank was being run in contravention of SOPs and safe practices. After an investigation into such allegations, plaintiff discovered falsified records of platelet donors, improper quality control, and inadequate training. Upon further investigation, plaintiff uncovered a number of other problems, including several violations of federal FDA regulations, along with violations of federal Medicare/Medicaid regulations concerning the falsification of records. On September 1, 2005, plaintiff notified the FDA of the results of her

investigation and informed the FDA that she had temporarily closed the BBDR. Thereafter, the FDA conducted its own investigation, finding unsatisfactorily completed temperature logs, a dirty centrifuge, messy documentation, improper maintenance records and record-keeping, and problems in the content of various SOPs.

After completion of the FDA inspection, plaintiff met with Folberg and others at an FDA summation meeting, where Folberg interrogated plaintiff about her communications with the FDA and ordered that she not have any further communication without his approval. At a similar meeting a week later, Folberg berated plaintiff about her "behavior" with the FDA, and intimated that she should resign as Director of Clinical Pathology. Although plaintiff attempted to correct the deficiencies of the Blood Bank, Folberg interfered by not allowing additional hires and not requiring the associate director to participate in the upgrades. Upon receiving a phone call at home from Folberg insisting she resign as Director of Clinical Pathology, plaintiff wrote a resignation e-mail using Folberg's suggested language. In subsequent days, Folberg removed plaintiff as a co-investigator of a clinical study, limited her access to a visiting quality inspector, and excluded her from an emergency meeting of the BBDR staff. Plaintiff's complaints to Folberg's superiors went unheeded; they acted to support the retaliation and failed to correct the reporting failures uncovered by plaintiff.

On May 1, 2006, plaintiff became seriously ill with a life-threatening eye disease, requiring her to miss work for approximately five weeks. Her leave was approved under the FMLA. Upon returning to work on June 5, 2006, plaintiff received two letters signed by Folberg. One stated that her appointment at the UIC Medical Center was not being renewed

and her last day would be August 15, 2006.[1]  The second letter reassigned plaintiff to non-clinical academic duties and prohibited her from visiting the Blood Bank or the BBDR.  The second letter also required plaintiff to immediately give her laptop computer to the Department of Pathology so that a copy of the hard drive could be made.  Plaintiff informed Folberg's assistant that the laptop computer was at her house and she would bring it the next day.  Acting under the direction of Folberg, his assistant had plaintiff's office belongings searched and told plaintiff to go with the UIC police to retrieve the laptop computer at her residence.  Once again, plaintiff's complaints about the event and Folberg's actions went unheeded.

Although plaintiff was to be hired by the College of Dentistry to participate in research collaboration, the Pathology Department's business manager, acting under the direction of Folberg, pressured the Dean of the College of Dentistry to cancel the agreement to hire plaintiff.  On September 8, 2006, plaintiff's offer of work was withdrawn.  Due to Folberg's intervention, plaintiff was later excluded from teaching at the College of Dentistry and College of Medicine.

Plaintiff now brings claims against Folberg for violation of her First Amendment rights.  Specifically, she asserts that Folberg's retaliatory conduct due to her communication with the FDA violated clearly-established principles of the First Amendment.  Plaintiff also brings a claim under the FMLA against the Board of Trustees.  She asserts that removal from her clinical responsibilities and appointment at the UIC Medical Center upon return from approved leave violated the federal statute.  Next, plaintiff claims that Folberg violated her

---

[1]Although the complaint indicates that it was dated August 15, 2005, the attached document reads August 15, 2006.

Fourth Amendment right to be free from illegal search and seizure. By causing plaintiff to be taken into custody by the UIC police, and the seizure of her laptop, plaintiff contends Folberg violated her constitutional rights. Additionally, plaintiff asserts a state law claim pursuant to 5 ILCS § 430/15-5 against Folberg and the Board of Trustees. Finally, plaintiff includes a count entitled "Irreparable Injury," in which she requests this court to appoint a monitor to prevent future retaliatory conduct.

Defendants now bring a limited motion to dismiss. Specifically, defendants request this court to dismiss Folberg in his official capacity from the FMLA and state law claims, in his personal capacity from the state law claim, and in both his official and personal capacity from the Fourth Amendment claim. Defendants also request that we strike plaintiff's request in connection with plaintiff's state law claim for a jury trial and punitive and compensatory damages, and the claim entitled "Irreparable Injury."

## DISCUSSION

We begin with defendants' contention that plaintiff's § 1983 Fourth Amendment claim against Folberg must be dismissed. Defendants first assert that plaintiff has failed to allege a § 1983 Fourth Amendment claim. In order to state a claim under § 1983, plaintiff must allege "(1) that [s]he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon [her] by a person or persons acting under color of state law." Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir.2004). Defendants contend that plaintiff has failed to allege a constitutional deprivation because her subjective belief that she had no choice other than to go with the officers is insufficient to establish a seizure. While defendants may be correct that subjective beliefs do not establish a constitutional violation (United States v. Wyatt, 179 F.3d 532, 536 (7th Cir.1999)), we must

remember that at this stage plaintiff's allegations must be allowed all reasonable inferences. Judge Shadur briefly addressed defendants' argument at an oral hearing on January 30, 2007. We agree with him that the complaint suggests that a reasonable person may have felt compelled to submit to the police escort. Defendants' citation to <u>Garagher v. Marzullo</u>, 478 F.Supp.2d 1008, (N.D.Ill.2006) is insufficient to save their argument. In <u>Garagher</u>, plaintiff's Fourth Amendment allegations were insufficient because she failed to allege that she was prohibited from doing anything other than physically assisting someone in a bar fight. In that case, Judge Bucklo commented that "on the face of the complaint, plaintiff has not alleged anything that would suggest she was not free to walk away or seek other forms of assistance, such as using the telephone to call the authorities or pleading with other patrons at the restaurant for help." <u>Garagher</u>, 478 F.Supp.2d at 1012. Here, plaintiff alleges that she believed she had no choice but to go with the police officers. It is reasonable from her allegations to infer that a reasonable person would not believe that he or she could walk away from the UIC police officers.

Judge Shadur also dismissed defendants' argument that Folberg was not responsible for any alleged constitutional deprivation. Defendants contend that "to the extent there was any false arrest or unlawful seizure...the state actors responsible would be campus security — not Dr. Folberg." (defs' motion at 6). Even non-state actors can be found liable for acting under color of state law by acting in concert with state actors to deprive someone of his or her constitutional rights. <u>Garagher</u>, 478 F.Supp.2d at 1011 (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970)). Defendant can be held liable under § 1983 "'if the conduct causing the constitutional deprivation occurs at [his] discretion or with [his] knowledge and consent.'" <u>Gentry v. Duckworth</u>, 65 F.3d 555, 561 (7th Cir.1995) (internal citations omitted). Plaintiff's

complaint sufficiently states that his assistants and the campus police officers were acting under Folberg's direction when they allegedly seized plaintiff and her property. Therefore, the personal responsibility requirement of § 1983 has been satisfied.

The question remains, however, whether Folberg is entitled to qualified immunity. Qualified immunity attaches to official discretionary conduct that does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Khuans v. School Dist. 110, 123 F.3d 1010, 1013 (7th Cir.1997) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Plaintiff sufficiently alleges that Folberg was a government official performing discretionary functions. In order to determine whether Folberg's conduct was one of objective legal reasonableness, we look at his conduct as alleged in the complaint. Id. Thus, "qualified immunity will apply unless (1) the conduct alleged in the complaint sets forth a constitutional violation and (2) the constitutional standards were clearly established at the time of the alleged violation" (id.) (internal citations omitted). See also Saucier v. Katz, 533 U.S. 194, 201 (2001). Because we have already determined that plaintiff alleged a constitutional violation, we turn to whether the constitutional standards were clearly established.

It appears that plaintiff is asserting a seizure of both her person and her personal item, her work laptop computer. We address the former. First, defendants suggest that neither Folberg nor his assistants were "mind readers," and therefore, could not have known "what introspective opposition Plaintiff may have harbored" (defs' motion at 8). Because we already determined that plaintiff's complaint, making all reasonable inferences in plaintiff's favor, sufficiently alleges an objective belief of inability to walk away from the custody situation, we reject defendants' first argument.

Second, defendants contend that "[a]t the time of the alleged violation, the constitutional standards were not clearly established ... that an official who arranges for a ride home for one of his employees during the work day to pick up her employer-issued computer at her house, albeit with campus security, has acted in violation of the Fourth Amendment" (defs' motion at 8). Plaintiff responds that "[h]ere the right of a state-employed doctor, academic and researcher to not be subjected to seizure by the police due to the retaliatory motives of her supervisor was well established"(plf's response, at 13). Whether a constitutional right was clearly established must be determined "in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. So while it is clearly established law that the Fourth Amendment protects one from unlawful seizure, the inquiry in this case is whether "it would be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted." Id., at 202. In this case that means that we must consider whether it would have been clear to a reasonable person in Folberg's situation that sending plaintiff home with a UIC police escort was violative of her rights.

Once a qualified immunity defense is raised, it is plaintiff's burden to establish that her constitutional right was clearly established. Boyd v. Owen, 481 F.3d 520, 527 (7th Cir.2007) (internal citations omitted). In order to establish that the right was clearly established, plaintiff may present case law that "'has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand.'" Id., at 526 (internal citations omitted). Where such a case does not exist, "a right may be clearly established where the contours of the right are sufficiently clear that reasonable persons would have understood their conduct to be unconstitutional, or where the constitutional violation is so patently obvious that widespread compliance with the law has prevented the court from reviewing it." Id., at 526-27 (internal

citations omitted). Because it is not clear to this court that plaintiff's arguments suffice to establish that the constitutional right was patently obvious, we turn to an analysis of <u>Yeksigian</u> <u>v. Nappi</u>, 900 F.2d 101 (7th Cir.1990), to which plaintiff turns as an analogous case. In <u>Yeksigian</u>, the Seventh Circuit held that city supervisors sued in their official capacities could be held liable under § 1983. In discussing whether plaintiff sufficiently pled action under color of state law, the Seventh Circuit found plaintiff's allegation that the city supervisory personnel abused their authority to secure, without justification, the arrest of an employee, sufficient. 900 F.2d at 104. Courts have read <u>Yeskigian</u> as stating an exception to the general rule that making false accusations to police is not generally considered state action for § 1983 purposes. <em>See</em> <u>Berry v. Lindemann</u>, 2006 WL 2536683, *2 (N.D.Ill.2006). Whether a reasonable person would know that he was violating clearly established law is a separate inquiry. <em>See</em> <u>Frazier v.</u> <u>Board of Educ. of City of Chicago</u>, 2003 WL 21510328 (N.D.Ill.2003) (finding a <u>Yeskigian</u> exception, but barring defendant's liability based on qualified immunity for failure to show defendant should have known his actions violated clearly established rights). Because plaintiff's complaint does not suggest that Folberg made false statements to the UIC police[2], plaintiff was not placed under arrest, and she never asserted her opposition to the escort, we cannot find that <u>Yeskigian</u> provides sufficient notice to Folberg that his conduct was illegal. Other than her attempt with <u>Yeskigian</u>, plaintiff has failed to point to any precedent with a similar or analogous fact pattern to show that Folberg should have known that he was violating her clearly established right.[3] Therefore, we grant defendants' motion to dismiss

---

[2]Although plaintiff asserts that it could be inferred from her complaint that Folberg made false statements to the police, we do not read it as such.

[3]In fact, plaintiff relies on <u>U.S. v. Mendenhall</u>, 446 U.S. 544 (1980) and <u>Kernats v. O'Sullivan</u>, 35 F.3d 1171 (7th Cir.1994) to argue that she was seized in violation of the Fourth Amendment. Not only do those two

plaintiff's Fourth Amendment claim based on the alleged seizure of her person.

Plaintiff also asserts a Fourth Amendment claim based on the search of her computer. Plaintiff suggests that "Defendant Folberg cannot show that the search of the computer was even justified in its scope as this was a computer used only for academic purposes; there was no allegation of wrongdoing; the complaint alleges its confiscation for copying was based on Defendant Folberg's retaliation of Dr. Maes and no other academic in the College of Medicine was subjected to having their computer seized to copy the hard drive" (plf's response, at 14). Defendant argues that the alleged seizure of plaintiff's computer was not a "seizure," as defined by the Fourth Amendment (defs' reply, at 6). Nor, defendants contend, does the alleged search of plaintiff's computer qualify as an illegal workplace search under the Fourth Amendment.

To successfully plead a Fourth Amendment violation, plaintiff must show that she had a reasonable expectation of privacy in her workplace computer. See U.S. v. Mendoza, 438 F.3d 792, 795 (7th Cir.2006) (citing Kyllo v. United States, 533 U.S. 27, 33 (2001)). We are guided in our analysis by the Supreme Court's decision in O'Connor v. Ortega, 480 U.S. 709 (1987). Therein, the Supreme Court defined workplace as "those areas and items that are related to work and are generally within the employer's control." O'Connor, 480 U.S. at 715. Based on plaintiff's complaint, we find that her government-issued laptop computer, which she often maintained in her home, is an item related to work and, therefore, search of that computer

---

cases have different fact patterns than the case at hand, both ultimately found no violation of the Fourth Amendment. In Mendenhall, the Supreme Court found that defendant voluntarily accompanied DEA agents, and therefore, evidence found during a search should not be suppressed. In Kernats, the Seventh Circuit determined that because police officer's conduct in ordering tenants to leave rental premises did not constitute a seizure under clearly established law, the officer's liability was barred by qualified immunity. Neither case assists plaintiff in her contention that Folberg should have known that his conduct violated her constitutional rights.

constitutes a workplace search. *See* <u>Narducci v. Village of Bellwood</u>, 444 F.Supp.2d 924, 931 (N.D.Ill.2006) (department phones are items related to work and generally within the employer's control). As plaintiff's complaint makes no mention of policies or practices that designate otherwise, we find that plaintiff had an expectation of privacy in her laptop computer. *See* <u>O'Connor</u>, 480 U.S. at 716 ("Within the workplace context, this Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police"); <u>United States v. Ziegler</u>, 474 F.3d 1184 (9th Cir.2007) (plaintiff had a reasonable expectation of privacy in his office and workplace computer). *But see* <u>Muick v. Glenayre Electronics</u>, 280 F.3d 741, 743 (7th Cir.2002) (plaintiff did not have a reasonable expectation of privacy in his workplace computer where his employer had previously announced its ability to inspect the laptops it furnished to employees).

Once we determine a reasonable expectation of privacy, we must consider whether plaintiff has sufficiently pled a violation of her Fourth Amendment rights. In <u>O'Connor</u>, the Supreme Court articulated a reasonableness standard for workplace searches. 480 U.S. at 725. The <u>O'Connor</u> court held that "public employer intrusions on the constitutionally protected privacy interests of government employees for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." *Id.*, at 725-26. The <u>O'Connor</u> reasonableness standard requires both justification in the inception and reasonableness of scope. *Id.*, at 726. Plaintiff contends that the search was not justified in its inception, nor was it reasonably related in scope to the circumstances.

Plaintiff's complaint suggests no justification for a search of her computer. In fact, the complaint alleges that the search was taken in retaliation for plaintiff's exercise of her First

Amendment and FMLA rights. Taking the complaint as fact, as we must, we find that
Folberg's search was not justified in its inception, and therefore, violative of O'Connor's first
prong. *But compare* Gossmeyer v. McDonald, 128 F.3d 481 (7th Cir.1997) (workplace search
was justified in its inception because anonymous tip of employee misconduct showed sufficient
signs of reliability); Clark v. Regents of the University of California, 1997 WL 564066
(N.D.Cal.1997) (receipt of tips from two employees as to plaintiff's misconduct justified search
under O'Connor). Nor are we convinced that Folberg's search was reasonable in its scope.
While escort by UIC police officers may not have created Fourth Amendment liability as to
plaintiff's person, the use of a police escort may be considered unreasonably intimidating. *But
see* Clark, 1997 WL 564066, at *4 (university supervisor's decision to choose plaintiff's
supervisor as an escort to his house to retrieve university-owned computer was less
intimidating than a university police officer or member of the audit team, and therefore,
reasonable in scope).

Although plaintiff has successfully pled an unconstitutional workplace search, Folberg
may be protected by qualified immunity. The Clark court explained the relationship between
the O'Connor analysis and qualified immunity analysis:

> In applying the qualified immunity and O'Connor standards to the instant case,
> it is important to note the interplay between them. The question before the
> Court is not whether the search and seizure of plaintiff's computer files was
> reasonable under the O'Connor test. Rather, in light of Cordon's qualified
> immunity, the question is whether a reasonable official could have believed that
> the search and seizure ordered by Cordon comported with the strictures of
> O'Connor.

1997 WL 564066, at *3. O'Connor clearly states that a public employer cannot institute a
workplace search without reasonable justification. At this stage in the litigation there are no
allegations, such as suggestions of plaintiff's misconduct, that would justify Folberg's

institution of a search. Without any allegations of misconduct or any other justification, a reasonable official could not have believed that the search and seizure of plaintiff's computer comported with O'Connor. Therefore, we decline to dismiss plaintiff's Fourth Amendment claim with respect to the search and seizure of her computer.

We turn now to plaintiff's claims under the state law Ethics Act. Defendants contend that plaintiff's request under that statute for compensatory and punitive damages should be stricken, as should the claim against Folberg in his personal capacity. Defendants assert that Ethics Act claims are limited to equitable actions, and therefore do not provide for compensatory or punitive damages or a jury trial. The parties have failed to point us to, nor have we uncovered, any precedent interpreting the Ethics Act with respect to remedies. The Act itself states:

> The State employee may be awarded all remedies necessary to make the State employee whole and to prevent future violations of this Article. Remedies imposed by the court may include, but are not limited to, all of the following:
> (1) reinstatement of the employee to either the same position held before the retaliatory action or to an equivalent position;
> (2) 2 times the amount of back pay;
> (3) interest on the back pay;
> (4) the reinstatement of full fringe benefits and seniority rights; and
> (5) the payment of reasonable costs and attorneys' fees.

5 ILCS 430/15-25. Defendants suggest that the doctrine of *ejusdem generis* limits the remedies to equitable remedies. The Illinois Supreme Court defined the doctrine of *ejusdem generis*, "|W|here a statute or document specifically enumerates several classes of persons or things and immediately following, and classed with such enumeration, the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that the persons or things therein comprised may be read as *Ejusdem generis* 'with,' and not of a

quality superior to or different from, those specifically enumerated." <u>Farley v. Marion Power Shovel Co.</u>, 328 N.E.2d 318, 320 (1975).

In the January 30, 2007, hearing before Judge Shadur, he noted that application of *ejusdem generis* to the statute at hand is seemingly inappropriate, particularly because the statute uses the phrase "includ[ing], but not limited to...." We are inclined to agree. In rejecting defendants reliance on *ejusdem generis* in another case before this court, we noted that the phrase "including, but not limited to" suggested breadth rather than limitation. <u>Northern Trust Co. v. MS Securities Services, Inc.</u>, 2006 WL 695668, *6 (N.D.Ill.2006). We also noted that *ejusdem generis* is often applied where specific terms precede a general term, rather than the other way around. *Id.* Such is not the case here – the "includ[ing] but not limited to" language precedes the specific terms and suggests a broad, rather than narrow, reading. Additionally, as Judge Shadur aptly noted, it is difficult to articulate the kinds of things set out as remedies that would be a limiting factor. *But compare* <u>Chen v. Quark Biotech, Inc.</u>, 2004 WL 1368797, *5 (N.D.Ill.2004) (noting that the language "includes but is not limited to" is a clear statement that other possible grounds for cause may exist, but limiting the terms of dismissal for cause in an employment contract to the same general class of conduct as the itemized grounds).

Further, we find the language of the statute allows for compensatory damages. *See* <u>People v. Montoya</u>, 2007 WL 1390636, *3 (Ill.App.Ct.2007) ("When the language is plain and unambiguous, we must apply the statute without resorting to further aids of statutory construction"). Black's Law Dictionary defines "compensatory damages" as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered." (BLACK'S LAW DICTIONARY 416 (8th ed. 1999). The statute at issue is designed to "make the State employee

whole." 5 ILCS 430/15-25.  Such is the purpose of compensatory damages.  *See* <u>In re Consolidated Objections to Tax Levies of School Dist. No. 205</u>, 739 N.E.2d 508, 513 (Ill.2000) ("the plain meaning of the term 'compensatory damages' is a monetary award paid to a person as compensation for loss or injury").  *See also* 740 ILCS 174/30 (private whistleblower statute allowing compensatory damages to "make the employee whole").[4]  In keeping with such an understanding, we find that plaintiff cannot seek punitive damages under the Ethics Act. *See* <u>Averett v. Chicago Patrolmen's Federal Credit Union</u>, 2007 WL 952034, *4 (N.D.Ill.2007) ("The plain meaning of 'make whole' allows for compensation of loss to return the plaintiff to his former condition, but not for recovery of punitive damages").  Therefore, at this stage we allow plaintiff to proceed with her compensatory damages claim, but dismiss her claims for punitive damages under the Ethics Act.  And once we determine that plaintiff may proceed with her compensatory damages claim, we find that plaintiff's request for determination of her Ethics Act claim by a jury may proceed.

Defendants also contend that plaintiff cannot assert a cause of action against Folberg in his personal capacity under the Ethics Act.  Generally, whether a claim is brought against a state defendant in his individual or official capacity is determined by the relief sought. <u>People ex rel. Dep't of Transp. v. Cook Development, Co.</u>, 653 N.E.2d 843, 849 (Ill.App.Ct.1995).  Plaintiff seeks the remedies set forth under 5 ILCS § 430/15-25, in addition to compensatory damages (cplt., ¶ 79).  She then seeks an award of punitive damages against Folberg "[t]o prevent future violations of the Act" (*id.*, ¶ 80).  We have already determined that plaintiff

---

[4]Defendants contend that the state legislature's decision to include "compensation for any damages" in the private whistleblower statute, but not in the public whistleblower statute cited here, was intentional, and therefore the public statute should not allow for compensatory damages. We, however, look to the private statute as helpful in defining the types of remedies available to make an employee whole.

cannot proceed with a claim for punitive damages against Folberg or any other entity. Plaintiff, however, asserts her intention to hold Folberg individually liable for injunctive and compensatory relief.

Without any guidance from the Illinois courts on the Ethics Act, we are flying a bit blind. The sole case citing the whistleblowing provision of the Ethics Act, <u>Combs-Hartshorn v. Budz</u>, 2007 WL 844582 (N.D.Ill.2007), sheds little light. Therein, Judge Darrah did not specifically address the question of whether the Ethics Act claim could be instituted against an individual, rather than solely a government entity, but did allow plaintiff's Ethics Act claim to proceed against three named defendants. We also note that the statute states that "[a]n officer, a member, a State employee, or a State agency shall not take any retaliatory action against a State employee ...." 5 ILCS § 430/15-10. The statute was amended in 2003, including the addition of the phrase "a State employee" in that introductory paragraph. The inclusion of individuals (officer, member, or State employee), including the specific addition of "State employee," suggests to us that the Illinois legislature intended to allow for individual liability. Therefore, we decline to dismiss Folberg in his individual capacity from plaintiff's Ethics Act claim.[5]

Finally, defendants contend that plaintiff's section VI, entitled "irreparable injury," must be stricken as improper. Therein, plaintiff noted that "persons at the highest level of the UIC Medical Center and the College of Medicine have either covered up evidence of serious wrongdoing or have punished whistleblowers who have attempted to bring evidence of such wrongdoing to light for public scrutiny" (cplt., ¶ 81). Therefore, "[a]s a result of this policy

---

[5]Defendants also request that we dismiss Folberg in his official capacity from plaintiff's FMLA claim (Claim II). It is clear that plaintiff intended to bring Claim II only against the Board of Trustees.

and practice ..., Dr. Maes will suffer irreparable harm for which there is no adequate remedy at law, necessitating equitable relief by the Court to appoint a monitor to prevent such retaliatory conduct in the future." (*Id.*, ¶ 82). Plaintiff does not respond to defendants' arguments regarding this section. We grant defendants' motion to dismiss plaintiff's section VI, as plaintiff specifically prays for such relief in Section VII, along with all "other relief as this Court deems necessary and proper." We find section VI repetitive and unnecessary.

## CONCLUSION

For the reasons stated herein, we grant defendants' motion to dismiss plaintiff's Fourth Amendment claim against Folberg for alleged seizure of her person and deny defendants' motion with regard to the alleged seizure of her workplace computer. We dismiss plaintiff's claims for punitive damages under the Ethics Act and allow her to proceed with her equitable and compensatory damages claims against the Board and Folberg. We dismiss plaintiff's Count VI, entitled "Irreparable Injury."

_____
**JAMES B. MORAN**
Senior Judge, U. S. District Court

June 27 , 2007.